UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
WILLIE MILLER,

                               Plaintiff,

                 -against-

TIMOTHY TERRILLION and CITY OF NEW
YORK,

                             Defendants.
----------------------------------------------------------- x

MEMORANDUM & ORDER

16-cv-52 (ENV) (RLM)

VITALIANO, D.J.

On November 14, 2019, defendant Timothy Terrillion, an NYPD officer, renewed his motion for partial summary judgment directed at plaintiff Willie Miller's Fourteenth Amendment fair trial claim. For the reasons set forth below, defendant's motion is granted.

Background

The Court assumes the familiarity of the parties with the facts of this case. On December 24, 2018, the Court, *inter alia*, denied a collective defense motion for partial summary judgment as to Miller's fair trial claim, finding the evidence showed a genuine dispute of material fact as to whether Officer Terrillion falsified evidence that led to Miller's arrest. *See Miller v. Terrillion*, 391 F. Supp. 3d 217, 221–23 (E.D.N.Y. 2019).[1] Significantly, there was no dispute then, nor is there one now, that Miller's criminal proceeding terminated upon his agreeing to an adjournment in contemplation of dismissal ("ACD"). *Id.* at 2; Dkt. 75, Def.'s Statement of Undisputed Facts ("Def.'s R. 56.1"), at ¶ 3; Dkt. 76, Def.'s Mem. in Support of Mot. for Partial Summ. J. ("Def.'s Mem."), at 2. With permission of the Court, Officer Terrillion has renewed his motion for partial

---

[1] Relevant background facts are set forth in this decision.

1

summary judgment on Miller's fair trial claim in light of the Supreme Court's decision last term in *McDonough v. Smith*, 588 U.S. —, 139 S. Ct. 2149, 204 L. Ed. 2d 506 (2019). Dkt. 73, Def.'s Mot. for Partial Summ. J. ("Def.'s Mot."); Def.'s Mem. He argues that it forecloses 42 U.S.C. § 1983 fair trial claims when the prosecution of the plaintiff was terminated, as in this case, by an ACD. *See generally* Def.'s Mem.

Legal Standard

Summary judgment must be awarded if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment only as to part of a claim. *Id.*; *see Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 157 (2d Cir. 2017). The Court may not weigh the evidence, but rather, it must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). Summary judgment is appropriate if the nonmoving party who bears the burden of proof at trial fails to offer "proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Renewed motions for partial summary judgment may be properly considered where the movant argues that, based on the undisputed facts, recent controlling authority bars a particular claim, thus presenting questions purely legal in nature. *See Ojo v. United States*, 364 F. Supp. 3d 163, 167–68 (E.D.N.Y. 2019); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236, 239 (S.D.N.Y. 2000), *aff'd*, 24 F. App'x 16 (2d Cir. 2001). Ordinarily, a movant is limited to a single, timely summary judgment motion, *see, e.g.*, *Sirico v. British Airways PLC*, No. 98-cv-4938 (FB), 2002 WL 113877, at *1 n.2 (E.D.N.Y. Jan. 22, 2002), but a renewed or successive motion may be noticed, as here, with Court permission, in its discretion. Sept. 27,

2019 Docket Order; *Warner Bros. Inc. v. Am. Broad. Companies, Inc.*, 720 F.2d 231, 245–46 (2d Cir. 1983).

## Discussion

To prevail on a fair trial claim based on fabrication of evidence, a plaintiff must prove that "(1) [an] investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 392 (E.D.N.Y. 2013) (quoting *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)). None of these elements is called into question on this motion. Instead, Officer Terrillion urges that the proper interpretation of *McDonough* adds, as a substantive element, a showing of a "favorable termination" of the criminal proceeding. It is further argued that the term "favorable termination" does not encompass ACDs. On this motion, therefore, in the wake of *McDonough*, two questions must be answered: (1) whether a § 1983 fair trial claim accrues only after a "favorable termination"; and (2) if so, whether an ACD may be considered a "favorable termination" in the fair trial context.

I. Favorable Termination Requirement

Officer Terrillion, seizing on the Supreme Court's reference in *McDonough* to a favorable termination requirement for malicious prosecution claims, presses for its equal application in the evaluation of fair trial claims. Def.'s Mem. at 4–7. Miller, on the other hand, urges cabining the holding of *McDonough* to the traditional reach of *Heck v. Humphrey*, which prohibited only those civil actions that "necessarily imply the invalidity of [one's] conviction or sentence." 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); Dkt. 77, Pl.'s Mem. in Opp. to Def.'s Mot. for Summ J. ("Pl.'s Resp."), at 4. Because, he argues, his fair trial claim was brought in the aftermath of his ACD, which resulted in neither a conviction nor a sentence,

3

neither *McDonough* nor *Heck* should be construed to affect his claim. *Id.*

The effect of *McDonough*, however, occupies a lacuna between the parties' positions, and can best be understood as operating in the shadow of *Heck* and a subsequent case, *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). In *Heck*, a prisoner brought a § 1983 action for damages[2] while a state court appeal of his conviction was pending. *Heck*, 512 U.S. at 479. Although his lawsuit did not directly challenge his conviction or confinement—a challenge that may only be brought in federal court by way of a habeas corpus proceeding, *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973)—the Court nevertheless held it to be an impermissible collateral attack. *Id.* at 486. Drawing parallels between the common law tort of malicious prosecution, which requires a showing that the prior criminal proceeding terminated in favor of the plaintiff, and the Court's long-expressed "concerns for finality and consistency," it held that the plaintiff's § 1983 lawsuit for damages accrued only if his outstanding conviction or sentence is "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 484–85, 489.

The Supreme Court revisited *Heck* in *Wallace*, holding that a § 1983 plaintiff's false imprisonment claim accrued not upon a favorable termination of his criminal proceedings, but on the date of his wrongful arrest, and that his limitations period began to run when his false imprisonment ended—that is, when legal process was initiated against him. 549 U.S. at 388–91 & n.3. It articulated the *Heck* rule as only implicated when "there exists . . . an 'outstanding criminal judgment,'" and, there being no extant conviction at the time of plaintiff's allegedly

---

[2] Specifically, plaintiff's complaint alleged that certain individuals, acting under color of state law, conducted an "unlawful, unreasonable, and arbitrary investigation" that led to his arrest; "knowingly destroyed" exculpatory evidence; and employed "an illegal and unlawful voice identification procedure" at trial. *Heck*, 512 U.S. at 479.

4

illegal detention, nor even a criminal indictment, his action did not run afoul of *Heck*. *Id.* at 393. In further support, it differentiated claims for false imprisonment from claims for malicious prosecution, noting that the latter sound in unlawful detention *after* the initiation of legal process, such that a § 1983 plaintiff no longer challenges the absence of legal process, but the "*wrongful institution* of legal process." *Wallace*, 549 U.S. at 389–90. Without a challenge to the legality of the prosecution, the Court refused to hold that "an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Id.* at 393. Instead, it held, a district court may stay a civil action for false arrest or for "any other claim related to rulings that will likely be made in a pending or anticipated criminal trial" until the conclusion of the criminal case. *Id.* at 393–94. In that way, *Wallace* was a re-enforcement of *Heck* rather than a limitation of it.

With *Heck* and *Wallace* as a backdrop, at issue in *McDonough* were both the accrual of, and the running of the limitations period for, a § 1983 fair trial claim brought by an acquitted criminal defendant alleging that the indictment charging him had relied on evidence fabricated by a government official. *McDonough*, 139 S. Ct. at 2153–54. In holding that the claim did not accrue until after plaintiff's acquittal, the Supreme Court, as in *Heck*, drew upon the common law tort of malicious prosecution by analogy, which, the Court reiterated, cannot be brought until either the criminal proceeding at issue "ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*."[3] *Id.* at 2158.

As a recent opinion in this district recognized, *McDonough*'s holding as to the running of plaintiff's limitation period relieved him of a "Hobson's choice of either pursuing a civil case

---

[3] Content beyond any doubt that the plaintiff's acquittal constituted a favorable termination, the Supreme Court declined to further define that term. *McDonough*, 139 S. Ct. at 2160 n.10.

5

while [his] criminal case was ongoing, or waiting to bring the civil action after [his] criminal matter is resolved with the risk that [his] fair trial claim will be time-barred." *Ross v. City of New York*, No. 17-cv-3505 (PKC) (SMG), 2019 WL 4805147, at *6 (E.D.N.Y. Sept. 30, 2019). Indeed, as noted in *McDonough*, prosecutions may last longer than the limitations period, forcing a criminal defendant either to let his claim expire, or to bring a civil suit against the very person prosecuting him, which risks exposing his defense strategy, jeopardizes his privilege against self-incrimination, and forces him to undertake additional discovery obligations not required in his criminal proceeding. *McDonough*, 139 S. Ct. at 2158.

Had the Supreme Court confined its ruling to prudential concerns about the applicable limitations period, Miller's argument that he need not show a favorable termination might have been sound. Instead, however, the Court went a step further, holding that the plaintiff's fair trial claim itself had not accrued until his acquittal. *Id.* at 2156–58, 2160. Unlike the false imprisonment claim at issue in *Wallace*, challenging confinement without legal process, the plaintiff's claim in *McDonough*—which, as here, sounded in the denial of due process[4]— attacked the legality of the criminal proceedings itself by impugning the very evidence that supported the indictment, thus meriting the extension of the *Heck* rule to his ongoing criminal proceedings. In other words, not only did the plaintiff's lawsuit "impermissibly risk parallel litigation and conflicting judgments" during the pendency of the criminal proceedings, it did not,

---

[4] The majority assumed, without deciding, the Second Circuit's characterization of the plaintiff's suit as one seeking to vindicate his rights under the Due Process Clause of the Fourteenth Amendment. *McDonough*, 139 S. Ct. at 2155. In his dissent, Justice Thomas argued *certiorari* was improvidently granted because the plaintiff failed to identify the specific constitutional right at issue, and to "fully explain[] the difference between [his malicious prosecution] claim and his fabrication claim." *Id.* at 2161–62 (Thomas, J., dissenting). Here, however, Miller has characterized his fair trial claim as one of deprivation of liberty without due process. *See* Dkt. 45, at 4–5; *Miller*, 391 F. Supp. 3d at 221.

like a false imprisonment claim, have "a life independent of an ongoing trial or putative conviction," and would have, as a result, threatened to impugn a future resolution of the criminal proceedings unfavorable to the criminal defendant turned civil rights plaintiff. *Id.* at 2159–60. The proper treatment of such claims, the Supreme Court determined, is their prohibition absent a favorable termination, rather than "put[ting] the onus to safeguard comity on district courts exercising case-by-case discretion." *Id.* at 2158.

Nevertheless, the *McDonough* majority "express[ed] no view as to what other constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence enforceable through a 42 U.S.C. § 1983 action," nor did it "consider the proper handling of other fabricated-evidence claims [deriving from the Due Process Clause, such as] an allegation that the use of fabricated evidence was so egregious as to shock the conscience . . . or caused harms exclusively to 'interests other than the interest in freedom from physical restraint.'" *McDonough*, 139 S. Ct. at 2155 n.2 (internal citations omitted). Accordingly, although it recognized that "[o]ne could imagine a fabricated evidence claim that does not allege that the violation's consequence was a liberty deprivation occasioned by the criminal proceedings themselves"—that is, where the allegedly fabricated evidence did not cause the initiation of lawful proceedings—plaintiff's claim did not fit that mold. *Id.* at 2160.

Clearly, then, the majority did not go as far as to impose wholesale a favorable termination requirement on all fair trial claims. Instead, *McDonough* expanded the *Heck* rule only to certain ongoing proceedings, and it stands for the more modest proposition that courts must evaluate the constitutional rights allegedly violated to determine whether the § 1983 action "'necessarily' questions the validity of a[n ongoing] proceeding." *Id.* at 2158 (quoting *Heck*, 512 U.S. at 487). Here, Miller alleges that the criminal proceedings against him were founded upon

7

fabricated evidence. Inescapably, such allegation falls within *McDonough*'s holding, and, consequently, his fair trial claim has not accrued unless and until his criminal proceedings terminated in his favor.

II. Miller's ACD

Syllogistically, compliant with *McDonough*'s imposition of a favorable termination requirement for fair trial claims such as Miller's, the Court must now answer whether, in this context, an ACD constitutes a "favorable termination." The ground is well-trod. It is uncontroverted in this circuit that acceptance of an ACD, because it is *not* a favorable disposition, precludes a malicious prosecution claim. *Rothstein v. Carriere*, 373 F.3d 275, 286–87 (2d Cir. 2004); *Singleton v. City of New York*, 632 F.2d 185, 193–94 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S. Ct. 1368, 67 L. Ed. 2d 347 (1981). Equally unassailable, prior to *McDonough*, courts in this circuit, including this one, were of accord that ACDs did not preclude fair trial claims of any stripe. *See, e.g., Miller*, 391 F. Supp. 3d at 222; *Case v. City of New York*, 233 F. Supp. 3d 372, 383 (S.D.N.Y. 2017) (denying motion to dismiss Sixth Amendment fair trial claim notwithstanding acceptance of ACDs); *Apostol v. City of New York*, No. 11-CV-3851 (RRM) (CLP), 2014 WL 1271201, at *5 (E.D.N.Y. Mar. 26, 2014) (acceptance of an ACD does not preclude fair trial claims), *aff'd*, 607 F. App'x 105 (2d Cir. 2015); *Dowling v. City of New York*, No. 11-CV-4954 NGG RML, 2013 WL 5502867, at *6 (E.D.N.Y. Sept. 30, 2013) (allowing a fair trial claim following the acceptance of an ACD); *Keller v. Sobolewski*, No. 10-CV-5198 (FB) (RML), 2012 WL 4863228, at *4–5 (E.D.N.Y. Oct. 12, 2012) ("[N]o precedent exists, in this circuit or otherwise, for dismissing a § 1983 claim for deprivation of the right to a fair trial in light of a plaintiff's acceptance of an ACD."); *see also Ross*, 2019 WL 4805147, at *6–8 (holding *McDonough* did not disturb these holdings).

As is clear from the above discussion of *McDonough*, there are strong parallels between the two claims in the context of an active criminal proceeding. Indeed, it can no longer be argued that a § 1983 claim, brought during the pendency of a criminal proceeding, is ripe, if it alleges that the prosecution is founded upon fabricated evidence. *McDonough*, 139 S. Ct. at 2158. In this regard, Miller's fair trial claim would undoubtedly face the same fate as a malicious prosecution claim if his criminal proceeding was still ongoing. Similarly, an acquittal, which, undisputedly, constitutes a termination favorable to a criminal defendant, paves the way for either claim, for there is no criminal judgment at risk of impugnment. Termination through acceptance of an ACD, however, occupies a middle ground not squarely addressed by *McDonough*, as an ACD, "by reason of its *sui generis* character, will leave the question [of guilt or innocence] unanswered." *Hollender v. Trump Vill. Co-op., Inc.*, 58 N.Y.2d 420, 425, 448 N.E.2d 432, 461 N.Y.S.2d 765 (1983). Just the same, a comparison of those two claims through the lens of *McDonough* leads to the inevitable conclusion that Miller's fair trial claim is barred by his acceptance of an ACD.

A claim for malicious prosecution may be brought as a state law claim, or as a claim pursuant to § 1983,[5] and requires showing that (1) the defendant initiated a criminal proceeding

---

[5] Although the claims are "substantially the same," *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quotation omitted), they have developed separately, including, as relevant here, their standard for determining whether a termination was favorable. *Lanning v. City of Glens Falls*, 908 F.3d 19, 24–26 (2d Cir. 2018)). Under New York law, a plaintiff must, in the very least, show that the termination was "not inconsistent with innocence." *Rothstein*, 373 F.3d at 286 (citing *Smith–Hunter v. Harvey*, 95 N.Y.2d 191, 198–99, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000)). The Second Circuit has observed that, with this standard, New York may have deviated from the traditional common law tort, which requires demonstration of innocence. *See Lanning*, 908 F.3d at 27–28 & n.7.

The Supreme Court has not defined the elements of a § 1983 malicious prosecution claim. *Manuel v. Joliet*, 580 U.S. —, 137 S. Ct. 911, 921–22, 197 L. Ed. 2d 312 (2017); *McDonough*, 139 S. Ct. at 2156 n.3 ("[T]his case provides no occasion to opine on what the elements of a

(2) which has favorably terminated (3) and which was not supported by probable cause, and (4) the defendant acted maliciously. *Rothstein*, 373 F.3d at 282. Similar to the concerns expressed in *McDonough*, the finality of a criminal proceeding is critical in the malicious prosecution context because "it cannot be known that the prosecution was unjust or unfounded until it was terminated," such that a parallel malicious prosecution action risks inconsistent judgments as to the same course of events. *Robbins v. Robbins*, 133 N.Y. 587, 599, 30 N.E. 977 (1892); *see also Murphy v. Lynn*, 118 F.3d 938, 948–49 (2d Cir. 1997) (a termination of a criminal proceeding cannot leave a lingering possibility of continued pursuit of the accused on the same charges). Patently, however, to allow a malicious prosecution claim to proceed absent a *favorable* termination would be to "permit a defendant to relitigate the issue of probable cause . . . thus posing the prospect of harassment, waste and endless litigation, contrary to principles of federalism." *Lanning*, 908 F.3d at 26 (quoting *Singleton*, 632 F.3d at 195). As a related policy matter, "having bought peace" while leaving open the question of guilt, the accused may not benefit from that bargain while simultaneously seeking to attack the foundation of the prosecution. *Rothstein*, 373 F.3d at 287 (quoting *Restatement (Second) of Torts* § 660, cmt. c).

By contrast, as previewed earlier, prior to *McDonough*, this circuit held consistently that the existence of probable cause does not bar § 1983 fabricated-evidence fair trial claims, as the fabrication of evidence is unconstitutional even if a defendant is otherwise subject to legal process. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129–30 (2d Cir. 1997) ("To hold that

---

constitutional malicious prosecution action under § 1983 are or how they may or may not differ from those of a fabricated-evidence claim."). Nevertheless, the Second Circuit has long entertained such claims, which derive from the Fourth Amendment's protection of personal liberty and privacy interests. *Lanning*, 908 F.3d at 24, 28; *Singleton*, 632 F.2d at 188. To maintain an action under § 1983, a termination must carry affirmative indicia of innocence under federal law. *Lanning*, 908 F.3d at 28.

police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice."); *see also Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014); *Morse v. Spitzer*, No. 07-cv-4793 (CBA) (RML), 2012 WL 3202963, at *3 (E.D.N.Y. Aug. 3, 2012). Therefore, while a malicious prosecution cause of action provides an avenue to vindicate the innocent—a label categorically incongruous with those who have accepted an ACD—a fair trial cause of action has historically served to remedy procedural violations separate and apart from questions of the plaintiff's innocence. *See Hoyos*, 999 F. Supp. 2d at 394 ("[W]here independent probable cause exists for the prosecution, plaintiff must show that the misconduct caused some deprivation above and beyond the facts of the prosecution itself.").

In light of *McDonough*, however, the nature of a fair trial claim must be scrutinized at its outset. Undoubtedly, as the Supreme Court recognized, certain categories of fair trial claims do not challenge probable cause in a manner threatening the validity of any conviction or sentence. *McDonough*, 139 S. Ct. at 2157–58, 2160. But criminal defendants may no longer aim their axes, by civil lawsuit, at the trunk of ongoing criminal proceedings, for such actions risk collaterally felling them. With this in mind, and with recognition that, in the absence of an ongoing prosecution, the traditional reach of the *Heck* rule does not squarely implicate ACDs, *McDonough*, still, by the force of its reasoning, compels revisiting the effect of an acceptance of an ACD on one's later ability to bring certain fabricated-evidence fair trial claims.

As this Court found in its previous summary judgment ruling in this case, the statement provided by Officer Terrillion was the "sole basis for the trespassing charge" brought against Miller. *Miller*, 391 F. Supp. 3d at 222. His fair trial claim attacks that very charge, and concomitantly, the legality of the prosecution against him, which, indeed, is the only basis for

Miller's alleged constitutional injury. Although the prosecution has terminated, Miller, like the plaintiff in *McDonough*, targets the very evidence that would have otherwise been shielded from collateral attack. To be clear, Officer Terrillion's motion gives the Court no occasion to assess an ACD's effect on a fair trial claim that, in fact, alleges injury separate and apart from the proceedings themselves.[6] But where, as here, a criminal defendant has traded resolution of his culpability for peace, *Rothstein*, 373 F.3d at 287, he may not bring a fair trial claim, the success of which would necessarily undermine the validity of a prosecution settled only by his acceptance of an ACD. *See Lanning*, 908 F.3d at 26.

## Conclusion

In line with the foregoing reasons, Officer Terrillion's motion for partial summary judgment is granted.

So Ordered.

Dated: Brooklyn, New York
January 30, 2020

/s/ USDJ Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge

---

[6] Miller urges this Court follow the holding in *Ross v. City of New York*, in which a court in this District (1) held that ACDs do not preclude fair trial claims; and (2) denied a defendant's motion for summary judgment. However, that court found that although defendant admitted that the allegedly fabricated evidence "was the entire basis for the arrest and the subsequent proceeding," a genuine dispute nevertheless existed as to whether that evidence caused the prosecution to pursue charges against plaintiff. *Ross*, 2019 WL 4805147, at *8–9.